# United States District Court

## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

JAMES EMORY McFADYEN
(White Male, DOB: 11-23-1955)
(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 07-68-FJL

FILED by _____ D.C.

JUL 31 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA - FT. PIERCE

I, the undersigned complainant, being duly sworn state the following is true and correct to the best of my knowledge and belief. Beginning on or about <u>July 8, 2007</u>, and continuing until on or about <u>July 20, 2007</u>, in <u>St. Lucie</u> County, in the <u>Southern</u> District of <u>Florida</u>, the defendant,

> did use a facility, a computer, in interstate commerce, to attempt to persuade, induce, or entice a minor to engage in sexual activity,

in violation of Title <u>18</u> United States Code, Section <u>2422(b)</u>.

I further state that I am a <u>Special Agent, Immigration and Customs Enforcement</u> and that this complaint is based on the following facts:

*SEE ATTACHED AFFIDAVIT.*

Continued on the attached and made a part hereof:    __X__ YES ____ NO

Signature of Complainant
Van B. Lindsey
Special Agent
Immigration and Customs Enforcement

Sworn to before me, and subscribed in my presence,

July 31, 2007                    at    Fort Pierce, Florida
Date                                   City and State

FRANK J. LYNCH, Jr.
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer            Signature of Judicial Officer

**AFFIDAVIT**
**OF**
**VAN B. LINDSEY**
**SPECIAL AGENT**
**DEPARTMENT OF HOMELAND SECURITY**
**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**

I, Van B. Lindsey, being duly sworn, state and depose:

1.   I am a Special Agent with the United States Immigration and Customs Enforcement (ICE). I have been so employed since January 2003. Prior to my employment with ICE, I served as a police officer for twelve years with the Fort Pierce (FL) Police Department. I am responsible for enforcing federal criminal statutes relating to Immigration and Customs Enforcement, including the title and section prohibiting the using of interstate or foreign commerce to induce, entice, or coerce a person under the age of 18 years of age to engage in sexual activity, to wit: Title 18, United States Code, Section 2422(b), along with any/all violations under Title 18.

2.   I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 United States Code. That is, I am an officer of the United States, who is empowered by law to conduct investigations of and make arrests for, offenses enumerated in Title 18, United States Code, Sections 2422, *et seq*.

1

3. I am familiar with the facts and circumstances of this investigation, and have only included sufficient facts and circumstances to establish probable cause.

4. This affidavit is made in support of a criminal complaint against JAMES McFADYEN for violations of Title 18, United States Code, Section 2422(b), (Use of a facility, a computer, in interstate or foreign commerce, to persuade, induce, or entice an individual under the age of 18 to engage in sexual intercourse).

5. During this affidavit, you will read the term "chat room" that refers to a virtual meeting place where users of an Internet service communicate with others who have a common interest in a designated topic. The term "instant message or private messaging" (IM/PM) is when two users communicate privately in text without other users observing this communication. The term "email" is an electronic message that you can send to an individual(s) and attach images and or other data. Spelling errors, grammar errors, and abbreviated words are common among users of Internet chat. The Internet Service Provider (ISP) used during this investigation was *America Online* (AOL). Any images or conversation transmitted or received while using AOL pass through their central server in the state of Virginia.

6. St. Lucie County Sheriff's Office (SLCSO) Detective Neil Spector presented me with the facts and events outlined in this affidavit.

7. Det. Spector has been a law enforcement officer since October 1987. He is currently assigned as an investigator in the criminal investigations division. He has approximately eleven years of investigative experience. He is currently investigating computer crimes relating to child pornography and crimes relating to the abuse and exploitation of children. He has investigated cases of child abuse and abuses of a sexual nature against children for approximately seven and one half years.

8. Det. Spector is a member in good standing with the Broward County Sheriff's Law Enforcement Against Child Harm Task Force (LEACH). This Task Force is a multi-agency task force who investigates child pornography and exploitation of children over the Internet. As an investigator, Det. Spector has applied for and participated in several hundred search warrants. He has attended seminars and schools in the related topics, including crimes against children, sex crime investigations, protecting children on line (basic and advanced), and advanced courses sponsored by the LEACH Task Force, which dealt directly with the exploitation of children and child pornography investigations over the Internet. He is also an instructor for the SLCSO in the investigation of juvenile sex crimes and is familiar with the operation and functions of a personal computer.

9. On July 8, 2007, at approximately 12:30 pm, Det. Spector, while in an undercover capacity, (hereinafter referred to as the

3

U/C), in Port St. Lucie, Florida, entered the AOL chat room "fathers." Approximately 20 minutes later, the U/C received an IM from the screen name "jmcf4340", who was later identified, and will be referred to in this affidavit as James McFadyen. McFadyen (JM) initiated this communication by saying "*hey there. 48 fit cool guy, Florida*". Conversation continued as follows:

| | |
|---|---|
| U/C | hi im joey 15 in boring port st lucie fl! |
| JM: | I'm jim, 48 in boring Sarasota!. I take it you're attracted to older guys joey?. |
| U/C: | not very experienced . . . just one time. |

    10. McFadyen continued to question the U/C about the sexual experience and typed the following statements/questions:

| | |
|---|---|
| JM: | what was the age of the one guy you were with;. . . what'd you guys do joey?; . . . what'd you do in the motel?; and do you want to tell me what you did in the motel ? what the sex stuff was? |
| U/C: | we did oral; . . . he fucked me. |
| JM: | ah baby boy yea! Did you like that joey?, and yea, it can be really awesome between a man and a boy, huh?. |

During further text communication

| | |
|---|---|
| JM: | did you do oral both ways?; did either of you cum in the others mouth?; did you like that joey? Having man cum in your mouth baby?; . . . did he cum in your butt joey?; and real nice. Kinda what I was thinking we might could do sometime. . .. When you're comfortable with it. |

    11. McFadyen asked the U/C if he had a picture that he could send to McFadyen via email. The U/C sent via email to McFadyen a picture of another SLCSO deputy when the deputy was fourteen. Upon

4

receiving the picture, McFadyen exclaimed "*ah baby joey boy ! You are beautiful!*, "*you are to fine boy ! and a beautiful smile!*

   12.   After sending this picture, McFadyen expressed concern about sending his photograph to the U/C:

JM:           i'd send you a pic joey, as long as i know and i can't get in huge trouble because of it!; like, what if your mom sees a pic of an older guy on the PC, etc.; i'm really trusting you joey . . .; and you know i can go to jail for messing with you, right?.

U/C:          are you going to send your pic,

JM:           just have to trust you to see I don't go to jail! We cool there?.

McFadyen then emailed two photographs of himself: one of himself standing by a building and one of McFadyen and his pet dog.

   13.   The text communication continued between McFadyen and the U/C:

JM:           i'd like to see a lot of you joey!; i'd like to talk to you on the phone sometime before i come over joey.  mainly for 2 reasons, to see you are you (not another AOL fake) and to see you're not a cop.; . . . i just have to be very, very careful; . . . you might get your butt smacked and put on restriction.  i go to jail.  loose my job, my house, all of it.  i just want you to understand where i'm coming from on this.  Cool?.

              i like you joey, and want to meet you, very much so.  just have to be careful.

   14.   The U/C and McFadyen then discussed talking on the telephone to set up a meeting.  During this conversation, McFadyen told the U/C that he would provide the U/C with a calling card so that the phone records would not appear on the U/C's mom's

5

telephone records. McFadyen then provided his telephone number 941-929-7180, and indicated that the number was his. The text communication between the U/C and McFadyen concluded with:

JM:        . . . you seem like a special and unique young man . . .; . . . bye for now cute boy! xoxoxoxox.

The text messaging concluded at 1:51 pm.

15. On July 10, 2007, at approximately 11:00 am, Det. Spector utilized a male employee of SLCSO to make an undercover telephone call to the telephone number provided by McFadyen. An answering machine picked up the telephone call; the male employee left a message. On July 10, 2007, at 5:35 pm, the U/C and McFadyen communicated via IM and talked about the telephone call to McFadyen by the SLCSO employee. During this communication, McFadyen told the U/C that he had *"an awesome voice joey; . . . i like how you said hi jim. i played it over a few times."*

16. During these conversations, McFadyen offered the U/C the opportunity to drive McFadyen's truck told the U/C *"yea, you'll like driving it joey! it really is a fun vehicle to drive."*

17. On July 16, 2007, at approximately 5:30 pm, the U/C utilized the same SLCSO employee to make a second telephone call to McFadyen. McFadyen answered the telephone and the two began a conversation. McFadyen said *"you sound much older and much more mature"*. McFadyen said he has been playing back the voice mail (from the first telephone call made by the same SLCSO employee). McFadyen said he has been trying to think of a way to get the U/C

more minutes on his calling card. McFadyen asked the U/C where he was located again. The U/C-employee told McFadyen he lived in Port St. Lucie. McFadyen said he was going to *Map Quest* it. During the course of the conversation, McFadyen said

JM: for some reason the law doesn't like us doing it but hey I think we can be friends whether they like it or not how's that cause I don't really quite give a damn what they want.

18. McFadyen suggested meeting Saturday, July 21, 2007, to which the U/C agreed. McFadyen again said he was going to purchase a calling card for the U/C, and mentioned purchasing the U/C a private mailbox for the U/C at a store. McFadyen said this way he could mail the U/C phone cards and the U/C would have his own mailbox. McFadyen said he needed directions to meet and said he wanted to meet someplace, but not the U/C's house. The U/C then emailed McFadyen directions to the McDonalds Restaurant on St. Lucie West Blvd., off of I-95 in Port St. Lucie, Florida.

19. On July 18, 2007, at 7:03 pm, the U/C and McFadyen communicated in an IM. The U/C asked how McFadyen was doing. McFadyen responded that he was doing well, and asked the U/C how the U/C was doing.

UC: good, excited, nervous.

JM: yea, two very good words to describe how I feel !; and one more for me . . . scared.

U/C: see im not scared. . . ,

JM: that's because you can't go to jail !.

7

    20.   McFadyen continued to communicate his concern to the U/C:

JM:          but you see joey...this is all very real
               is goes on all day every day
               it's all in the media, all the time
               setting traps for guys like me.

    21.   As a result of this concern, the following communication took place:

U/C:         so what do u want me to do?,

JM:          there's nothing you can do, ya know?.

U/C:         well we don't have to meet

JM:          we want the same thing. to meet. and to have no trouble ! lol; and if for some reason, you were to not be who you say you are, or, be who you are and be working for law enforcement, I would be arrested as soon as we met.

               it's a high risk game joey ! for guys like me.

    22.   The communication between the U/C and McFadyen continued with McFadyen expressing concern that "joey" was working with law enforcement.

JM:          . . . i know it could be frustrating for you too because you can't prove anything to me, until i trust you.

U/C:         well i have an idea . . . is we don't meet,

JM:          i've thought about postponing meeting too; . . . but 2 problems with that. . .. One, the only way we can get beyond this is by talking on the phone, and for that you need minutes and i can't get you minutes till we meet! lol. two, i'm afraid i'll loose YOU all together if i wait.

23. After telling the UC that the visit wasn't about sex, McFadyen proceeded to communicate the following:

JM: joey, i guess it comes down to respect and appreciation if i drove over, we met, went to a motel, had sex, and i left . . .. other than momentary physical pleasure, what do you have?; that i think more of you that just some kid to come fuck and leave; it's illegal an adult having sex with a minor even where the minor consents; but we could move to Hawaii together where the age is 14!; . . . i have a chart of all 50 states showing the legal ages for each state in 3 catagories - boy/girl or boy/boy or girl/girl.

24. McFadyen again expressed concern that "joey" was a law enforcement agent or was working with law enforcement. McFadyen then proceeded to make plans to travel to Port St. Lucie, Florida to meet with "joey" but requested the U/C "cute and paste" the statement *"I am not a law enforcement officer or working with a law enforcement agency of any kind. I am not working with any group or agency of any kind."* The U/C then cut and paste these statements back to McFadyen.

25. On July 21, 2007, at approximately 1:15 pm, McFadyen arrived at the McDonalds Restaurant in Port St. Lucie, Florida, driving the *Toyota* truck described in the previous communications. McFadyen was taken into custody by the SLCSO.

26. At the Sheriff's Office, Det. Spector advised McFadyen of his <u>Miranda</u> rights; McFadyen waived his rights and agreed to talk with law enforcement. McFadyen admitted to traveling from Sarasota, to Port St. Lucie, Florida to meet with a fifteen year

old male. McFadyen explained that he was only meeting with the fifteen year old to act as a mentor such as a father figure and not to engage in sexual activity with the minor. After further questioning, McFadyen stated that he wanted to establish a relationship with the fifteen year old until the "Joey" turned eighteen and then have sexual contact with the "Joey" *because then it would be legal*. McFadyen also admitted to using the screen name "Jmcf4340", and that he thought that he was communicating via IM and emails with a fifteen year old boy. McFadyen had in his possession a small bag that contained a change of clothes; a map to Port St. Lucie; an unloaded 357 cal. handgun, ammunition for the firearm next to the firearm; and a pill bottle that contained marijuana cigarettes, which field tested positive.

Further, your affiant sayeth naught.

_____
Van B. Lindsey
Special Agent
Immigration and Customs
Enforcement


Sworn and subscribed to before me this 31st day of July 2007.

_____
Frank J. Lynch, Jr.
United States Magistrate Judge